IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Gary Slezak, #109201,                    )          C/A No. 4:03-3797-27BH
                                         )
              Petitioner,                )
                                         )
    vs.                                  )
                                         )          REPORT AND RECOMMENDATION
Stanley Burt, Warden of Lieber           )
Correctional Inst.; and Henry McMaster,  )
Attorney General of South Carolina,      )
                                         )
              Respondents.               )
_____)

Petitioner, Gary Slezak, ("petitioner/Slezak"), is an inmate in the custody of the

South Carolina Department of Corrections (SCDC). Petitioner filed his petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 on December 31, 2003. Petitioner filed an

amended/supplemental habeas petition on February 10, 2004. Respondents filed a motion

for summary judgment on April 30, 2004, along with supporting memorandum. Petitioner,

through counsel, filed a response on August 17, 2004.


I.  PROCEDURAL HISTORY

Respondents set forth the procedural history in their memorandum in support of their

motion for summary judgment which was not disputed by petitioner's counsel in his

memorandum in opposition to respondents' motion. Therefore, the undersigned will set out

the undisputed procedural history as set out by respondents in their memorandum.

Petitioner, Gary Slezak, is presently confined in the Lieber Correctional Institution

of the S.C. Department of Corrections (SCDC) pursuant to commitment orders from the



Charleston County Clerk of Court. The Charleston County Grand jury indicted petitioner in April 1981 for two counts of murder and one count of armed robbery. He pleaded guilty to these charges before the Honorable Richard Fields on January 15, 1982. Robert B. Wallace, William M. Youngblood and Paul E. Tinkler, Esquires, represented him. Judge Fields imposed a life sentence for each murder and twenty years for armed robbery.

Petitioner subsequently filed an Application for Post-Conviction Relief dated January 25, 1982. He raised the following allegations in his 1982 Application:

1.    I don't think I was given the proper sentence as [I] was told I would receive,

> Have a letter from my attorney stating I would received a life sentence and have to do a minimum of 20 with one year for time served.

2.    Lack of Speedy Trial.

> Spent over 11 months in county jail. Chas. SC. without bail.

1996 App. pp. 34-35.

Respondents filed a Return and Motion to Dismiss on September 18, 1982. 1996 App. pp. 38-40. The Honorable Paul M. Moore held a hearing into the matter on October 15, 1982. Petitioner was present at the hearing and Robert B. Wallace, Esquire, represented him. Petitioner testified in his own behalf at the hearing and he presented the testimony of trial counsel, Robert B. Wallace, Esquire. The State did not present any witnesses. 1999 App. pp. 43-72.

Judge Moore denied relief and dismissed the Application with prejudice in an Order dated December 15, 1982. Petitioner did not appeal the denial of his first PCR Application.

2



Instead, he filed his second Application dated August 16, 1989. **App. pp. 74-81.** In

the 1989 Application, he alleged the following grounds for relief:

1. Ineffective assistance of counsel.

2. The passage of the Omnibus Criminal Justice Improvement Act which provides that Applicant may no longer be eligible for work release, earned work credit, and annual parole review is violative of Applicant's right against ex post facto changes in the law.

3. The South Carolina Department of Corrections is improperly denying Applicant "A" custody status.

1999 App. pp. 75-77. The State filed a Return and moved for summary dismissal on

September 21, 1989. **App. pp. 87-93.**

Petitioner thereafter submitted an Amended Petition for Post-Conviction relief dated

April 24, 1990, in which he raised the following grounds for relief:

9.(a) The Applicant was denied the effective assistance of counsel by trial counsel and Post-Conviction counsel at all stages of his appeal process in violation of the due process clause and the Sixth and Fourteenth Amendments to the United States Constitution through counsels failure to advise his clients as to his right to appeal or to file a timely appeal for his client and the failure of the clerk of court while applicant was in the county jail to supply notice of appeal forms for applicants to file a application for appeal to the court.

9.(b) The Applicant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution by failure to properly and accurately advise the Applicant on the sentence he could expect to receive upon a plea of guilty. Conviction was obtained by a plea of guilty which was unlawfully induced or not made voluntarily with full understanding of nature and elements of the charge and the consequences of the plea and sentence.

3



9.(c)   The Applicant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution by virtue of Applicants plea was involuntary because of misrepresentation of counsel.

    1.    Counsel misrepresented the position of the prosecutor.

    2.    In the alternative, counsel failed to timely advise Petitioner Slezak of the change of position of the prosecutor.

9.(d)   The Applicant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments, due process and equal protection clause to the United States Constitution, by virtue of counsel's failure to properly develop an alibi defense, locate and call witnesses to establish clients alibi defense, and call character witnesses in behalf of client.

9.(e)   The Applicant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments, due process and equal protection clause to the United States Constitution, by his attorney failure to make appropriate motions.

9.(f)   The Applicant was denied the effective assistance of counsel in violation on the Sixth and Fourteenth Amendments to the United States Constitution by virtue of Applicants original counsel on PCR failure to amend petition or conduct any investigation into facts or materials that were stronger than those Applicant originally brought up.

9.(g)   Applicant was denied his right to due process and equal protection of the laws, in violation of ex post facto clause Article 1. Section 10 and the Fourteenth Amendment to the United States Constitution, by virtue of the illegal passage of laws in violation of Article 3 section IV of the State Constitution of South Carolina, namely the Omnibus Criminal Justice Improvements Act of 1986 and/or helping to bring about these more than 230 illegal bobtailed acts in violation of their own state constitution and therefore making applicants time more onerous and unconscionable by the application to Applicant in an Ex Post Facto manner and thus to deny him work release and earned work credits, parole, furlough, and access to the courts. Applicant was never told by the court or counsel that

4



legislation could be passed that would effect his rights and privileges for work release and extended work release, parole, and educational work release.

9.(h)  The Applicant was denied his right to Due Process and Equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution, by virtue of the state's passage of the Omnibus Criminal Justice Improvements Act and by application of these laws by the classification boards and committees of the Department of Correction, by treatment of the Applicant while in prison as a violent offender for his past crimes which he has already served time for, thus denying Applicant proper security and custody status and transfers and

9.(i)  The Applicant has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution as well as Article I, Section 15, of the South Carolina Constitution by imposition of a sentence and application of new laws in a Ex Post Facto Manor, which is unduly harsh and unusual.

1999 App.pp.94-130.

The Honorable William J. McLeod held a hearing into the matter on November 8, 1990. Petitioner was present and was represented by Barbara Leedom, Esquire. Marshall Prince, of the South Carolina Attorney General's Office, represented the State. Petitioner testified at the hearing and was the only witness. 1999 App.pp. 136-62. Judge McLeod signed an Order dated October 18, 1991, in which he dismissed petitioner's allegations of ineffective assistance of trial counsel, granted the allegation as to the Ex Post Facto Clause violation based upon the application of the Omnibus Crime Bill and continued petitioner's allegation of ineffective assistance of prior PCR counsel. App. pp. 164-76. With respect to petitioner's claims of ineffective assistance of trial counsel, Judge McLeod found that these

5



allegations were barred because the 1989 Application was successive to his previous application. 1999 App.pp. 169-70.

Petitioner submitted a *pro se* Motion to Alter or Amend, dated October 29, 1991; 1991 App. pp. 178-81; However, respondents state that their records do not reveal that this *pro se* pleading was ever ruled upon by the trial court. Respondents assert that the Court would not have considered this motion as having been filed because petitioner was represented by counsel at the time he submitted it.

The State timely appealed the PCR judge's ruling. On December 16, 1991, it filed a Petition for Writ of Certiorari (1999 App.pp.202-18), in which it presented the following question for review by the South Carolina Supreme Court:

> Did the lower court err in ruling that an *ex post facto* violation exists in the application of the Omnibus Crime Bill to the Respondents' case so that the Respondent is unable to earn work credits toward his parole eligibility, when the date of Respondent's crime was in April of 1981, at which time South Carolina law did not provide for persons serving life sentences for murder to be able to count earned work credits toward parole eligibility.

1999 App. 204. Slezak, through counsel, John D. Elliott, Esquire, filed a Return to Petition for Writ of Certiorari on April 5, 1993. 1999 App. pp. 219-25.

The South Carolina Supreme Court granted certiorari, dispensed with further briefing and reversed the grant of relief on June 30, 1993. *Slezak v. State,* 93-MO-191(S.C.S.Ct., filed June 30, 1993). In doing so, the Court relied upon its decision in *Elmore v. State, 409 S.E.2d 397 (S.C. 1991).* 1996 App.p.85.

6



Petitioner, through counsel (Mr. Elliott), filed yet another PCR Application on March 20, 1995. (95-CP-10-3799). **1999 App.pp. 226-32.** He alleged the following ground for relief in his 1995 Application:

> 1.  The Applicant was denied the effective assistance of post-conviction relief counsel, by his failure to raise a critical, elemental ground for post-conviction relief.

1995 App. pp. 86-92. The State made its Return and Motion to Dismiss on November 27, 1995. 1995 App. pp. 94-99.

In a Conditional Order of Dismissal dated December 1, 1995, the Honorable Victor A. Rawl conditionally dismissed the 1995 Application and gave petitioner twenty days to show cause why the 1995 Application should not be summarily dismissed as successive. 1996 App. pp. 108-12. Subsequently, petitioner filed an objection and requested that the Order be vacated. (Again, he was represented by Mr. Elliott). **1991 App. pp. 113-21.** By Order dated February 8, 1996, the Honorable Larry R. Patterson denied the request and signed a final Order of Dismissal. **1996 App. pp. 126-27.**

Mr. Elliott then filed a "Notice of Motion and Motion" on petitioner's behalf, wherein he requested an evidentiary hearing on his allegation of ineffective assistance of collateral counsel and moved for a new PCR hearing "on the grounds the manner and method in which the final judgment in this case was obtained is fatally defective and flawed." 1991 App. pp. 128-31. The State filed a Return and Motion to Dismiss on April 5, 1996. **1996 App. pp. 133-34.** Judge Patterson denied Petitioner's Motion in an Order filed May 16, 1996. **1996 App. pp. 137-38.**

7



Petitioner filed a timely notice of appeal and a Petition for Writ of Certiorari was filed on his behalf by Mr. Elliott on October 14, 1996. Petitioner raise the following issue on certiorari:

> The entry of the orders of dismissal of the petitioner's application, without an evidentiary hearing, was error, because the petitioner's specific allegations of the ineffective assistance of post-conviction relief counsel constituted exceptional circumstances to the general rule prohibiting successive applications for post-conviction relief.

1996 Petition for Writ of Certiorari at 9. The State filed a Return to Petition for Writ of Certiorari on December 17, 1996.

In an Order dated April 17, 1997, the South Carolina Supreme Court granted certiorari, dispensed with further briefing, reversed the Order of Dismissal and remanded the case for an evidentiary hearing on whether petitioner's original PCR counsel was ineffective. The Court further ordered that if the PCR court concluded that the first PCR counsel was ineffective, then petitioner must raise any claims of ineffective assistance of trial counsel at the same time.

Pursuant to the Supreme Court's Order, a hearing into the matter was convened on February 19, 1998, before the Honorable Sidney T. Floyd. Petitioner was present at the hearing and Harry Devoe, Esquire, represented him. Petitioner testified at the hearing and also presented the testimony of his lead trial counsel, Mr. Wallace. 1999 App. pp. 250-336. Judge Floyd denied relief and dismissed the 1995 Application with prejudice in an Order of Dismissal filed on March 20, 1998. 1999 App. pp. 338-52. Petitioner filed a Notice and



8

Motion to Alter, Amend and/or Modify Judgment on April 21, 1998. **1999 App. pp.** 353-63. Judge Floyd denied this motion in an Order filed on May 18, 1998. **1999 App. pp.** 364-72.

Petitioner filed a timely notice of appeal. On June 7, 1999, petitioner, represented by Mr. Devoe, filed a Petition for Writ of Certiorari and raised seven issues for review by the South Carolina Supreme Court:

1. Whether the PCR court erred in concluding that Petitioner's first PCR attorney was not ineffective?

2. Whether the PCR court erred in finding the Petitioner failed to meet his burden of proof in his *Austin* claim?

3. Whether Petitioner's first PCR was a nullity, and dismissal of Petitioner's subsequent claims of ineffective assistance of trial counsel as impermissibly successive were erroneous, resulting from consideration of the nullity?

4. Whether the Petitioner's guilty plea was knowingly, intelligently, and voluntarily entered; and whether trial counsel performed deficiently, to the prejudice of the Petitioner where he failed to assure waivers of rights by Petitioner were made on the record?

5. Whether the Petitioner's not receiving 'good time' credits toward parole eligibility constitutes an *ex post facto* violation?

6. Whether redefinition of Petitioner's convictions as 'violent' offenses constitutes a substantive *ex post facto* violation increasing the quantum of punishment from that imposed upon Petitioner?

7. Whether unforseeable judicial construction has rendered Petitioner's guilty plea involuntary as unintelligently entered?

1999 Petition for Writ of Certiorari at p. 2.



The State made a Return to Petition for Writ of Certiorari on August 6, 1999. *2003 App. pp. 19-32.*

By Order dated May 10, 2000, the Supreme Court denied the petition on all grounds except Slezak's claim pertaining to his classification as a violent offender. This claim was remanded to the Circuit Court pursuant to *Jernigan v. State,* 340 S.C. 256, 531 S.E.2d 507 (2000), and *Al-Shabazz v. State,* 338 S.C. 354, 527 S.E.2d 742 (2000) to determine which agency the matter should be remanded to for further proceedings: S.C.D.C. or the Department of Probation, Pardon and Parole Services. *2003 App. pp. 33-34.*

The Honorable Jackson V. Gregory filed an Order of Dismissal and Remand on November 26, 2001, in which he dismissed petitioner's PCR Application with prejudice based on his finding that petitioner's allegations concerning his allegedly improper classification as a violent offender should be addressed to S.C.D.C. pursuant to *Al-Shabazz.* *2003 App. pp. 35-39.* Petitioner timely served and filed a Notice of Appeal.

On May 12, 2003, Assistant Appellate Defender Aileen P. Clare filed a *Johnson* Petition for Writ of Certiorari on petitioner's behalf and petitioned to be relief as counsel. The only issue raised in the *Johnson* Petition was stated as follows:

> Did the trial court properly remand Petitioner's PCR Application for administrative resolution, when the clear language of the PCR statute permits his claims.

2003 *Johnson* Petition for Writ of Certiorari at p. 2. Petitioner thereafter submitted a *pro se* "Notice of Motion and Motion for Relief From Judgment and Motion for Leave to



Amend/Supplement Application dated January 16, 2003, together with a myriad of attachments.

The South Carolina Supreme Court, which had previously filed an Order on January 10, 2003, informing him that it would no longer accept *pro se* filings by him because of his "numerous abuses of the appellate process and voluminous *pro se* filings," see *Foster v. State*, 379 S.E.2d 907 (S.C. 1989), filed an Order on March 5, 2003, denying his motions and stated it would not accept any documents unless submitted by his counsel, Ms. Clare. On June 2, 2003, the Honorable Daniel E. Shearouse wrote Ms. Clare and inquired as to whether the issue before the Court was now moot because a letter petitioner had attempted to supplement the record with, from the South Carolina Department of Probation, Parole and Pardon Services, informed petitioner that his parole review date was being changed to annual review. Counsel wrote Mr. Shearouse on June 3, 2003, and stated the matter was moot. The South Carolina Supreme Court filed an Order on June 6, 2003, dismissing the appeal as moot; and the Remittitur was sent to the lower court on June 26, 2003.

Meanwhile, on July 31, 2002, petitioner filed yet another PCR Application (2003-CP-10-4209), in which he sought to raise three issues.

1.    Ineffective assistance of counsel;

2.    The passage of the Omnibus Criminal Justice Improvement Act which provides the Petitioner may no longer be eligible for work release, earned work credit and annual parole is violative of Applicant's right against ex post facto changes in the law.

3.    The South Carolina Department of Corrections is improperly denying Applicant "A" custody status.



The State filed a Return and Motion to Dismiss dated January 10, 2001, in which it asserted that the 2000 Application must be summarily dismissed because it was successive to the other PCR applications. Petitioner submitted a *pro se* "Opposition to Respondent's Motion to Dismiss."

On September 26, 2001, the Honorable R. Markley Dennis, Jr. heard respondent's Motion to Dismiss. Petitioner was present at the hearing and Joseph F. Kent, Esquire, represented him. Senior Assistant Attorney General William Edgar Salter, III, represented the State. Judge Dennis did not take any testimony at the hearing.

On September 26, 2001, Judge Dennis signed an Order granting the motion to dismiss. Petitioner, through, Mr. Kent, filed a timely Motion to Reconsider or Modify. On January 18, 2002, Judge Dennis filed an Order Denying Motion to Reconsider or Modify. Petitioner served and filed a Notice of Appeal.

On September 22, 2002, Ms. Clare filed a *Johnson* Petition for Writ of Certiorari on Petitioner's behalf and petitioned to be relieved as counsel. The only issue raised in the *Johnson* petition was stated as follows:

> Are petitioner's claims successive when he alleges continuing breaches of his plea agreement?

*Johnson* Petition at p. 2. Petitioner submitted a *pro se* Brief of Appellant pursuant to *Johnson v. State*. The South Carolina Supreme Court denied certiorari and granted counsel's request to be relieved in an unpublished Order filed on December 4, 2002. The Remittitur was sent to the lower court on January 10, 2003.



Petitioner filed yet another PCR Application on February 21, 2003 (2003-CP-10-766), in which he raised the following allegations:

1. The Applicant was denied the effective assistance of post-conviction relief counsel, by his failure to raise a critical, elemental ground for post-conviction relief.

   PCR counsel failed to raise the issue of ineffective assistance of plea counsel.

2. The trial Court was without jurisdiction to accept the Applicant's pleas to the relevant charges.

   [Applicant's argument is based on the statute controlling inmate work credit].

On September 10, 2003, the state filed a Return and Motion to Dismiss, arguing that the 2003 Application was successive. Judge Dennis heard the State's Motion on September 12, 2003. Petitioner was present at the hearing and Andrew D. Grimes, Esquire, represented him. Assistant Attorney General Melody J. Brown represented the State. (Again, no testimony was taken).

Judge Dennis granted the State's motion in an Order of Dismissal signed on November 21, 2003. Judge Dennis found that the Application was barred as successive and that the issues were barred by collateral estoppel, since petitioner raised the same issues in his third PCR application. Respondents assert, and petitioner has not denied, that an appeal from this Order is currently pending in the South Carolina Supreme Court. On April 26, 2004, Assistant Appellate Defender Robert M. Pachak filed a *Johnson* Petition for Writ of Certiorari on Petitioner's behalf and moved to be relieved as counsel. The issue raised in the *Johnson* Petition is stated as follows:

13



Whether there was any evidence to support the
PCR judge's findings that petitioner's application
for post-conviction relief was successful?

## II. HABEAS ALLEGATIONS

Petitioner raises the following grounds for relief in is *pro se* Petition for Writ of

Habeas Corpus:

A. Ground 1.

The Petitioner received ineffective
Assistance of trial counsel prior to and
during his guilty plea proceeding in
violation of his rights pursuant to the
Sixth and Fourteenth Amendments to the
United States Constitution, as well as
Article I, section 14 of the South Carolina
Constitution.

B. Ground 2.

The Petitioner's pleas of guilty were not
voluntary, knowingly and intelligently
entered inasmuch as they were the
product of the Ineffective Assistance of
Counsel he received prior to and during
his pleas in violation of his rights pursuant
to the Sixth and Fourteenth Amendment
to the United States Constitution, as well
as Article I, Section 14 of the South
Carolina Constitution.

C. Ground 3.

Petitioner was denied due process in
violation of his rights pursuant to the
Sixth and Fourteenth Amendments to the
United States Constitution, as well as
Article I, § 14 of the South Carolina
Constitution because the trial court was
without subject matter jurisdiction to
accept his guilty pleas.

D. Ground 4.

Petitioner received Ineffective Assistance
of Trial Counsel in violation of his rights

14



pursuant to the Sixth and Fourteenth Amendments to the United States Constitution because the trial court was without subject matter jurisdiction and counsel failed to file a post-trial motion for arrest of the judgment.

E. Ground[5].        Petitioner alleges that his convictions for murder must be vacated because the indictments for murder are insufficient as a matter of law because they do not comply with S.C. Code Ann. § 17-19-30 (1985).

In an Amended/Supplemental Habeas Corpus Petition, petitioner alleges five

additional grounds for relief:

1.    Petitioner must be released because the Parole Boards decision to deny parole is not supported by any evidence.

2.    The Parole Board failed to give Petitioner's Application for parole individualized consideration required by South Carolina law.

3.    The Parole Board's process for evaluating Petitioner's parole suitability violated Petitioner's federal and state due process rights and requires his release on parole.

4.    The Parole Board's bias against granting parole to those who have committed murder deprived Petitioner of his right to due process under the state and federal constitutions.

5.    The Parole Boards denial of parole violates petitioner's right against the ex post facto application of penal laws, due process and the separation of powers clause of the federal and state constitutions.

(Document # 7).

15



### III. SUMMARY JUDGMENT

On April 30, 2004, the respondents filed a return and memorandum of law in support of their motion for summary judgment (document # 17). Petitioner, through counsel, responded to the motion for summary judgment. (Document # 250).

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.

16



See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof

concerning an essential element of the non-moving party's case, all other facts become

immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the

defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the

petitioner has failed to make a sufficient showing on essential elements of his case with

respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.


### IV.  STANDARD OF REVIEW

Since Slezak filed his petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28

U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett,

134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute

now reads:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim--(1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the

state court's application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st  Cir.

1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision



plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

18



The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.   DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

19



(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)    A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state

20



law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.


### 2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly

21



stated that the procedural bypass of a constitutional claim in earlier state proceedings

forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986).

Bypass can occur at any level of the state proceedings, if a state has procedural rules which

bar its courts from considering claims not raised in a timely fashion. The two routes of

appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial)

and the South Carolina Supreme Court will refuse to consider claims raised in a second

appeal which could have been raised at an earlier time. Further, if a prisoner has failed to

file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from

proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier

default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the
> finality of those decisions, by forcing the defendant to litigate all of his claims
> together, as quickly after trial as the docket will allow, and while the attention
> of the appellate court is focused on his case.

<u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless
> the defendant succeeds in showing both "cause" for
> noncompliance with the state rule and "actual prejudice"
> resulting from the alleged constitutional violation.

<u>Smith v. Murray</u>, <u>supra</u>, quoting <u>Wainwright v. Sykes</u>, 433 U.S. at 84 (1977); <u>see also Engle</u>

<u>v. Isaac</u>, 456 U.S. 107, 135 (1982).



Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of

justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

With that background, relevant issues in relation to petitioner's claim will be discussed.

24



## VI.  MERITS

### A. Ground One

As previously discussed, petitioner raises the following as ground one in his habeas petition:

> The Petitioner received ineffective Assistance of trial counsel prior to and during his guilty plea proceed in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, section 14 of the South Carolina Constitution.

(Petition).

Petitioner asserts in his memorandum in support of his petition that his guilty pleas were not voluntary and intelligently entered under the meaning of <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). Petitioner argues that the trial court erred in failing to ask him his understanding upon what the plea agreement terms were based.

In their memorandum in support of their motion for summary judgment, the respondents argue  that this allegation was procedurally defaulted in the course of state PCR proceedings because petitioner did not raise this claim "at any point in the torturous history of his various filings." Further, respondents argue that petitioner cannot show cause for this default since it is predicated upon the United States Supreme Court's decision in <u>Boykin, supra</u>. Respondents argue that "to the extent he believed the allegation had merit, he could have asserted it any one of his five PCR applications. That he chose not to do so speaks volumes to the lack of merit of this allegation. He also cannot show prejudice from the default." (Respondents' memorandum, p. 20). Respondents argue that petitioner was thoroughly questioned by the trial judge about the voluntariness of his plea and his understanding, as well as, his counsel. Thus, respondents assert

25



that the record of the plea and sentencing satisfies the requirements of <u>Boykin</u> revealing that his plea was voluntary.

Petitioner, through counsel, filed a response to the motion for summary judgment arguing that his plea was defective because he had no notice on the record of the elements of the crimes with which he was charged and there is no acknowledgment he committed them. Specifically, petitioner argues that he was never apprised of the elements of the offenses to which he was pleading guilty. The court elicited from Mr. Slezak his understanding of the charges in the indictments and possible defenses with this exchange. However, petitioner argues that he never acknowledged that he committed the crimes and there is the inference that he thought there might be some defense because of how quickly, within seven days, that he filed an appeal. Petitioner argues that "it is therefore easily inferable from the record that Mr. Slezak did not have a clear understanding of the crimes with which he was charged, and there is certainly no clear admission of guilt on this record." (Petitioner's memorandum). Petitioner, through counsel, also argues that he has not defaulted on this claim in that he raised these claims in the petition pursued by Mr. Devoe as a result of an order issued by the South Carolina Supreme Court on April 17, 1997, directing that an evidentiary hearing be convened on the question of whether petitioner's original post-conviction counsel was ineffective in failing to assert the ineffectiveness of trial counsel, and if so, entertain any allegations of trial counsel's ineffectiveness at that time. Petitioner argues that a hearing was held on February 10, 1998, before the Honorable Sidney Floyd who denied relief. A petition for certiorari was denied by the Supreme Court in an order dated May 10, 2000.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. <u>McMann v. Richardson</u>, 397 U.S. 759,

771 n.14 (1970). In the case of <u>Strickland</u>, <u>supra</u>, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) (quoting <u>Strickland</u>, <u>reversed on other grounds</u>, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Strickland</u>, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide range</u> of professionally competent assistance. (Emphasis added.)

In <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the



prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A plea of guilty is considered by the court to be a solemn judicial admission that the charges against the defendant are true. The defendant may not later argue that his plea was invalid except in extremely limited circumstances, Blackledge v. Allison, 431 U.S. 63 (1977). The statements made by a defendant at the time he pleads guilty are taken as conclusive unless he can clearly demonstrate why those statements were not true, Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975).

A review of Hill, supra, by the undersigned reveals the court held that, quoted verbatim:

> Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the "prejudice" requirement in Strickland v. Washington are also relevant in the context of guilty pleas.

Hill, 474 U.S. at 56.

After reviewing the record before the court, the undersigned finds that this issue is not procedurally barred in that after the South Carolina Supreme Court remanded the petition for writ of certiorari, the PCR court allowed petitioner to raise any claims he chose including ineffective assistance of trial counsel even though it was not raised in the first PCR.

After a review of the transcripts, the undersigned finds that trial counsel was not ineffective. Petitioner pleaded guilty under oath to the charges. At the beginning of the proceedings, the



solicitor stated the following: "At this time, the defendant intends to enter pleas of guilty to the three indictments, your honor; and in exchange for these pleas, the State has previously served notice of intent to seek the Death Penalty, and the State is withdrawing its intention to seek the Death penalty in exchange for these pleas." (Tr. 22). One of the petitioner's three attorneys, Mr. Wallace, stated to the court that he and Mr. Youngblood "particularly have conferred with Mr. Slezak on occasions too numerous to recall and literally hours concerning not only – this plea but the charges, the possible defenses, the evidence on numerous occasions.'" (Tr. 24). When questioned by the judge if he thought petitioner understood the charges, the implication of these charges, and the possible punishment applicable to each of them, counsel responded that ". . . in my opinion, Mr. Slezak is intelligent, very intelligent person. I think he clearly understands the charges. I think he clearly understands the charges. I think he clearly understands the penalties in this case, the maximum penalties. And in the instance of Murder, the fact that the sentence would be automatic and that is life imprisonment." (Tr. 24).

At the time of the plea, petitioner stated that he pleaded guilty, that he entered the plea of his own free will and accord, that no one pressured him or promised him a reward of any kind, that he understood the rights as to a jury trial, and the rights he was waiving for pleading guilty. Petitioner stated that he still wanted to plead guilty. When questioned if he was satisfied with the advice and representation of his attorneys, petitioner responded "fully, sir" and told the trial judge that his attorneys had done everything they possibly could have in his behalf.

Petitioner pleaded guilty to the charges. A guilty plea waives nearly all non-jurisdictional claims except for claims concerning the voluntariness of the plea and the effectiveness of defense counsel. A plea of guilty is considered by the court to be a solemn judicial admission that the

29



charges against the defendant are true.  The defendant may not later argue that his plea was invalid except in extremely limited circumstances, <u>Blackledge v. Allison</u>, <u>supra</u>. The Court in <u>Tollett</u>, <u>supra</u> held the following:

> We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry.  And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, <u>McMann</u>, <u>supra</u>, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

<u>Tollett</u>, 411 U.S. 266-267.

A review of the PCR transcript reveals that the PCR judge found the following:

> As to the Applicant's allegation that he received ineffective assistance of trial counsel, this Court finds that the extensive guilty plea record speaks for itself. Counsel for the Applicant was diligent in his representation of the Applicant, performed well within the range of competence demanded of attorneys in criminal matters and performed within the wide range of reasonable professional assistance. . . .

> This court specifically finds that the representation provided to the Applicant by his trial attorney, both prior to and during his guilty plea

30



proceeding, is well within the standard of competence demanded of attorneys in criminal matters and is within the wide range of reasonable professional assistance.

However, the principle reason that his Court must rule that the Applicant's attorneys were effective is because the Applicant did not show otherwise. The burden of proof in a post-conviction relief case rests squarely on the applicant's shoulders, and this Applicant did not in any way carry his burden of proof. The Applicant did not show this Court any reason why further action on the part of his attorney would have benefitted him, how there would have been a reasonable probability of his coming out with a better result, or why his attorney should have acted in any other way than he did. . .

Applicant claims that he received ineffective assistance and/or that his guilty plea was involuntary because counsel promised that Applicant would receive concurrent sentences. The Court finds the allegation meritless.

This Court finds that this issue was raised at Applicant's first PCR hearing and denied in the order of dismissal. First PCR Tr. p. 27, lines 1-12; Order of Dismissal (1st PCR) p. 2-3. Therefore, the issue is successive. In any case, this Court also finds that the allegation is without merit. This Court finds that the withdrawal of the State's intent to seek the death penalty was the only negotiation in the case. This Court finds that Applicant was not promised concurrent sentences.

Applicant claims that he received ineffective assistance and/or that his guilty plea was involuntary because he pled guilty based on assurances that he would receive work release. Specifically, Applicant claims that promises of work release were material in his decision to plead guilty. The Court finds the allegation meritless.

Initially, this Court finds that Applicant's testimony in this regard is not credible. This Court finds that Applicant did not enter his guilty plea on reliance that he would receive work release. This Court finds that Applicant received no promises in exchange for his guilty plea, except that the State would not seek the death penalty. Further, this Court finds that in Gunter v. State, 298 S.C. 113, 378 S.E.2d 443 (1989), the South Carolina Supreme Court held that the Board of Corrections (now the director of the Department of Corrections) has discretion in determining whether to allow an inmate to participate



in a work release program; therefore, participation in a work release program is a privilege giving rise to no vested rights cognizable under the ex post facto doctrine. Specifically, our Court found no ex post facto violation in the denial of work release eligibility to individuals who were previously eligible for the program. . .

Applicant claims that he received ineffective assistance and/or that his guilty plea was involuntary because he pled guilty based on assurances that he would receive work release. Specifically, Applicant claims that promises of earned work credits were material in his decision to plead guilty. The Court finds the allegations meritless.

Initially, this Court finds that Applicant's testimony in this regard is not credible. This Court finds that Applicant did not enter his guilty plea on reliance that he would receive earned work credits. This Court finds that Applicant received no promises in exchange for his guilty plea, except that he State would not seek the death penalty.

Further, this Court finds that the South Carolina Supreme Court ruled [on writ of certiorari from Applicant's second PCR] that Applicant's procedural due process was not violated by loss of EWC's. Slezak v. State, Memo. Op. No, 93-MO-191 (S.C. Sup. Ct. filed June 30, 1993).

(Tr. 342-348).

The PCR Court denied petitioner's Rule 52 and 59, SCRCP, motion to alter, amend and/or modify the order of dismissal dated March 20, 1998, in a second order filed May 18, 1998, stating the following with regard to the issue of ineffective assistance of trial counsel:

This Court's order specifically addressed the allegation that counsel was ineffective for not requesting concurrent sentences (claim d, page 9). This Court finds that Applicant provided no legitimate reason why the finding is incorrect. Further, though this matter is now moot, this Court points out that Applicant is an admitted double murderer. This Court finds that Applicant pleaded guilty for only one reason: to save his own life. This Court finds that although the law allows for concurrent sentences in Applicant's situation, Applicant provides no reason why counsel was ineffective in the plea negotiations. More importantly, Applicant provides absolutely no reason why any court would have been persuaded to grant mercy beyond the sparing [of] Applicant's life.

32

Parole Review:    This Court finds that Applicant is listed as "unclassified" within SCDC. This Court finds that pursuant to the 1986 Omnibus Crime Bill, Applicant's crime was classified as violent for parole review purposes. First, this Court finds that there is no vested liberty interest in retaining or receiving any particular security or custody status. Second, this Court finds that Applicant's biannual parole review status pursuant to his violent classification does not violate the ex post facto clause.

Work release: In Gunter v. State, 298 S.C. 113, 378 S.E.2d 443 (1989), this Court held that the Board of Corrections has discretion in determining whether to allow an inmate even to participate in a work release program; therefore, participation in a work release program is a privilege giving rise to no vested rights cognizable under the ex post facto violation in the denial of work release eligibility to individuals who were previously eligible for the program.

Subsequently, in Griffin v. State, 315 S.C. 285, 433 S.E.2d 862 (1993), this Court overruled its previous decision in Gunter regarding parole review eligibility (statute that changed review for parole form annual to biannual review violated ex post facto clauses of State and Federal Constitutions). However, Griffin did not overrule Gunter in regard to the Court's holding on work release.

This Court finds that the Applicant's status as violent is not a change in the definition of the crime of murder or armed robbery; thus, it is not ex post facto.

(Tr. 368-370).

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. §2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in Strickland, 466 U.S. 668, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. See Hoots v. Allsbrook, 785 f.2d 1214, 1219 & n. 6 (4th Cir. 1986) ("old" § 22254(d) standard) and Williams, supra.

33

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Trial counsel testified at the PCR hearing that he and the other attorneys informed the trial judge that they had spend literally hours on numerous occasions in discussions with petitioner concerning not only his plea but the charges, possible defenses, and the evidence. Counsel also testified at the PCR hearing that they had informed the trial court that petitioner clearly understood the penalties. (PCR Tr. 39-40). As the state court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra. The record supports the court's finding that counsel met the reasonableness test of Strickland, supra. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable. Petitioner pleaded guilty and avoided the possibility of going to trial and receiving the death penalty if found guilty. Therefore, based on the above, ground one is without merit and is appropriately denied for habeas corpus consideration. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

## GROUND TWO

Petitioner raises the following as ground two in his habeas petition:

> The Petitioner's pleas of guilty were not voluntary, knowingly and intelligently entered inasmuch as they were the product of the Ineffective Assistance of Counsel he received prior to and during his pleas in violation of his rights pursuant to the Sixth and Fourteenth Amendment to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution.



34

Petitioner alleges that his plea was not freely and voluntarily entered because the plea was silent about the rights petitioner was waiving in violation of Boykin, supra. Further, petitioner argues that the judge accepted the guilty plea without a factual proffer from either the state or the defense and did not inquire as to whether a plea agreement had been reached and its terms. Petitioner alleges that he was not informed of his privilege to protection from self-incrimination as there was no mention of the consequences of his plea. Additionally, petitioner argues that "ex post facto violations have both increased the quantum of punishment he is subjected to, and changed the definition of the crime from non-violent to violent, impacting upon the quantum of punishment served by the petitioner" and that counsel misadvised him as to the law and facts surrounding the plea.

Respondents argue that this issue is procedurally barred because the PCR court found that these allegations were barred as successive because they could have been raised by him in his first PCR application. Further, respondents assert that the state supreme court denied the 1999 certiorari petition as to these contentions.

The petitioner did not raise these issues in his initial PCR application. He attempted to raise the issues in a second PCR application which was dismissed as successive. Therefore, these issues were not raised on direct appeal or in a proper PCR application. The petitioner has not shown cause and prejudice to overcome the default. Petitioner has not set forth any cause in his response for procedural default. Accordingly, it is recommended that this issue, ground two, be dismissed as procedurally barred.

Should the District Judge conclude that this issue is not procedurally barred as petitioner raised ineffective assistance of PCR counsel which was granted by the state supreme court in the

35



petition for writ of certiorari and remanded for a hearing in state court, the undersigned finds that for the reasons stated under ground one, petitioner has not shown that his counsel was ineffective during the plea and the trial judge throughly questioned him as to his understanding of the plea and the rights he was waiving. Further, petitioner argues that his guilty plea was not voluntary and intelligently entered and "but for petitioner's informed belief that he would be eligible for release under the parole guideline criteria in effect at the time of his crimes, in approximately 10 years service of sentence, or less, he would not have pleaded guilty." However, a review of the plea transcript reveals that petitioner's attorney stated that petitioner understood that his sentence for murder would be automatic, that is life imprisonment. (Tr. 24). Petitioner argues that he entered his pleas with the understanding that all then existing prison programs would be available to him including the benefit of the newly enacted work credit statute and that he should not have been treated as a violent offender. A review of the exhibit petitioner submitted with his memorandum in support of his amended habeas petition reveals that the Department of Probation, Parole and Pardon Services stated that because the burglary was committed in the nighttime, it was considered a violent crime. Further, it is noted from respondents' memorandum, and not opposed in petitioner's response, that petitioner's Assistant Appellate Defender, Aileen P. Clare, informed the court that the issue of parole consideration hearings was moot in that petitioner was currently receiving annual parole reconsideration hearings pursuant to the records of the South Carolina Department of Corrections. As to petitioner's allegation that he never admitted guilt during the plea, it is noted that the judge asked petitioner if he felt that he was guilty of the charges contained in the three indictments that he had stated he was pleading guilty to and petitioner responded "yes, your honor, I do." (Tr. 27). As to petitioner's allegation that the nature of the

36

charges were not announced, the transcript of the plea reveals that it was announced that petitioner was indicted for murder, murder and armed robbery and that he stated he understood the nature of the charges in the three indictments and wanted to plead guilty. At the time of sentencing, which had been delayed for three days from the time of the plea per petitioner's counsels' request, the full facts surrounding the nature of the charges were announced to the court. (Sentencing proceeding, App. 15-30). Petitioner's attorney stated that "unfortunately, most of the facts related by the Solicitor are accurate, and this horrible tragedy occurred." (App. 32). Then, petitioner's attorney set out their version of the facts. The court inquired of petitioner if he had anything to say and he stated, "no, sir." (App. 36). As part of the plea, petitioner's counsel stated that the state had agreed to withdraw the request for the death penalty in return for the plea, the Assistant United States Attorney agreed not to prosecute petitioner for any alleged theft of postal funds, and the State agreed not to prosecute petitioner for any alleged violation of the gun purchase statute or any alleged violation relating to some drugs that were dispensed. At the time of the petitioner's first PCR hearing, petitioner stated that the only reason he pleaded guilty was to avoid the possibility of receiving the death penalty. (Tr. App. 50). Based on the reasons set out above and under ground one, the undersigned recommends that summary judgment be granted with respect to Ground Two.

## GROUND THREE

Petitioner raised the following as ground three in his federal petition for habeas corpus relief:



> Petitioner was denied due process in violation of his rights pursuant to the Sixth and Fourteenth Amendment's to the United States Constitution, a well as Article I, § 14 of the South Carolina Constitution because the trial court was without subject matter jurisdiction to accept his guilty pleas.

(Petition).

Petitioner challenges the sufficiency of the murder and armed robbery indictments and again alleges violation of ex post facto laws.

Respondents argue that petitioner's argument, except for dealing with subject matter jurisdiction, would be procedurally barred. To the extent of the adequacy of the indictments, respondents argue that petitioner fails to state a claim for relief. Respondents assert that a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter that is cognizable in federal habeas corpus.

Petitioner's counsel did not set forth any argument in opposition to this issue in respondents' motion for summary judgment. Petitioner, through counsel, only stated that for all other grounds for relief, "applicant relies on his application, supporting memorandum, and the record." (Document # 25).

The undersigned recommends that this issue be dismissed for two reasons. First, the issues were not raised in the PCR application or to the states highest court so it is procedurally defaulted. Second, as this issue pertains to the state court's jurisdiction, this issue should be dismissed because claims arising from state law are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.). Therefore, the undersigned recommends that this ground be dismissed.

38



## GROUND FOUR

Petitioner raises the following as ground four in his habeas petition.

> Petitioner received Ineffective Assistance of Trial Counsel in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution because the trial court was without subject matter jurisdiction and counsel failed to file a post-trial motion for arrest of the judgment.

Petitioner's argument on this issue in his memorandum in support of the petition is as follows:

> Trail [sic.] Counsel was ineffective for failing to file a motion for arrest of judgment. A motion for arrest of judgment where the charging document is insufficient or the court lacked jurisdiction to try the matter . . . A defendant may make a motion for arrest of judgment alleging an insufficiency of the indictment . . . Had counsel filed such a motion in all likelihood it would have been successful. Counsel was ineffective for allowing the Petitioner to waive his right's under the circumstances of this case and for failing to file any post-verdict motion to bring to the court's attention the lack of subject matter jurisdiction of the trial court to accept the Petitioner's pleas and the insufficiency of his indictment's.

(Document # 3, p. 25).

Respondents assert that petitioner procedurally defaulted on this allegation in state court by never asserting the claim "in his myriad of PCR applications and amendments" and he cannot show cause and prejudice for overcoming this default. (Document # 17, p. 28).

Petitioner's counsel did not set forth any argument in opposition to this issue in respondents' motion for summary judgment. Petitioner, through counsel, only stated that for all other grounds for relief, "applicant relies on his application, supporting memorandum, and the record." (Document #25).



The undersigned finds that this issue is procedurally barred as petitioner did not raise it in his numerous PCR applications. Further, petitioner has failed to show cause and prejudice for the default. Petitioner has failed to show that he or trial counsel did not have adequate notice of the charges against him or that they were unable to defend against those charges. Petitioner has not alleged or discussed in his memorandum how or why the indictments were not sufficient. Therefore, this issue should be denied in that counsel's performance was neither deficient nor prejudicial.

## GROUND FIVE

Petitioner raises the following as ground five in his habeas petition:

> Petitioner alleges that his convictions for murder must be vacated because the indictments for murder are insufficient as a matter of law because they do not comply with S.C. Code Ann. § 17-19-30 (1985).

Petitioner argues that "the present indictments do not state the time and place of the murders sufficient to confer subject matter jurisdiction and does not set forth the manner in which the deceased was killed" in violation of S. C. Code Ann. § 17-19-30. (Doc. #3, p. 31).

Respondents assert in opposition that a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter that is cognizable in federal habeas corpus.

Petitioner's counsel did not set forth any argument in opposition to this issue in respondents' motion for summary judgment. Petitioner, through counsel, only stated that

40



for all other grounds for relief, "applicant relies on his application, supporting memorandum, and the record." (Document #25).

It is recommended that this issue be dismissed as this issue pertains to the state court's jurisdiction. This issue should be dismissed because claims arising from state law are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.). Therefore, the undersigned recommends that this ground be dismissed.

## AMENDMENT GROUNDS ONE-FIVE

The remaining grounds that petitioner raised in his amended/supplemental petition all concern the denial of parole on January 13, 2004. Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).   Therefore, it is recommended that these grounds be dismissed.

## VII.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents" motion for summary judgment (document #16) be GRANTED.

(Signature on next page)

41



Respectfully Submitted,

Thomas E. Rogers, III
United States Magistrate Judge

_Feb. 24_, 2005
Florence, South Carolina

The parties' attention is directed to the important notice on the next page.

42

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The Serious Consequences of a Failure to Do So

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 USC § 636 and Fed. R. Civ P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge fourteen (14) days** after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n.3, 1992 U.S. Dist. LEXIS ® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S. Dist. LEXIS ® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must** *specifically identify* **the portions of the Report and Recommendation to which objections are made and the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), <i>cert. denied</i>, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S. App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.) (party precluded from raising on appeal factual issue to which it did not object in the district court), <i>cert. denied</i>, 474 U.S. 1009 (1985). In <u>Howard</u>, <i>supra</i>, the court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *** We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating that 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S. App. LEXIS® 15,084 (8th Cir. 1989) ("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984) ("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* <u>Wright v. Collins</u>, *supra*; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S. App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina    29503**
