UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gary Slezak, # 109201,  )  | C/A No. 4:03-3797-RBH |
| ) | |
| Petitioner,    ) | |
| ) | |
| vs.    ) | ORDER |
| ) | |
| Stanley Burt, Warden of Lieber ) | |
| Correctional Inst.; and Henry McMaster, ) | |
| Attorney General of South Carolina, ) | |
| ) | |
| Respondents.    ) | |
| _____) | |

    Petitioner Gary Slezak is an inmate of the South Carolina Department of Corrections ("SCDC"). Petitioner petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. That petition was filed on September 16, 2003. Petitioner filed an amended/supplemental petition on February 10, 2004.[1]

**Procedural History**

    Petitioner is currently confined by SCDC serving two (2) life sentences for murder and twenty (20) years for armed robbery. Petitioner pled guilty to these charges on January 15, 1982. Petitioner did not appeal these convictions. Petitioner filed an application for post-conviction relief ("PCR"), which was denied by written order December 15, 1982. Petitioner did not appeal the denial of this PCR application. Instead, on August 16, 1989, petitioner filed a second PCR application. The Honorable William J. McLeod dismissed petitioner's allegations of ineffective assistance of trial counsel and granted relief as to petitioner's ex post facto clause violation claim. The State appealed

---

[1] Petitioner filed his original petition and the amended petition, *pro se*. He is now represented by attorney John D. Elliot, who filed a notice of appearance with this Court on June 8, 2004.

1

the PCR judge's ruling and filed a petition for writ of certiorari with the South Carolina Supreme Court. The South Carolina Supreme Court granted certiorari, dispensed with further briefing, and reversed the PCR judge's grant of relief. *See Slezak v. South Carolina*, 93-MO-191 (S.C. June 30, 1993).

Petitioner, through counsel, filed another PCR application on March 20, 1995. A conditional order of dismissal was issued by the Honorable Victor A. Rawl on December 1, 1995, giving petitioner twenty (20) days to show cause why the 1995 application should not be summarily dismissed as successive. Despite petitioner's objection, the Honorable Larry R. Patterson signed a final order of dismissal on February 8, 1996. Petitioner appealed the denial of relief and the South Carolina Supreme Court granted certiorari. That Court dispensed with further briefing, reversed the Order of Dismissal, and remanded the case for an evidentiary hearing to determine if petitioner's original PCR counsel was ineffective. The Court further ordered that if the PCR court concluded that Petitioner's first PCR counsel was ineffective, then petitioner must raise any claims of ineffective assistance of trial counsel at the same time. On remand, the Honorable Sidney T. Floyd denied relief and dismissed petitioner's 1995 application. Petitioner filed a motion to alter, amend and/or modify judgment that was denied by Judge Floyd on May 18, 1998. Petitioner once again appealed to the South Carolina Supreme Court. The South Carolina Supreme Court denied the petition on all grounds except petitioner's claim pertaining to his classification as a violent offender. This claim was remanded to the Circuit Court pursuant to *Jernigan v. South Carolina*, 531 S.E.2d 507 (2000), and *Al-Shabazz v. South Carolina*, 527 S.E.2d 742 (2000) to determine whether the matter should be remanded to SCDC or the Department of Probation, Pardon, and Parole Services. On remand, the Honorable Jackson V. Gregory filed an order of dismissal and remanded the case to SCDC on

November 26, 2001. Petitioner appealed this decision. The South Carolina Supreme Court filed an Order on March 5, 2003, denying petitioner's motions and stating that in the future it would not accept any documents from petitioner unless submitted by his appointed counsel.[2]

On July 31, 2002, petitioner filed yet another PCR application. On September 26, 2001, by written order, the Honorable R. Markley Dennis, Jr., granted respondent's motion to dismiss. After a *Johnson*[3] petition for writ of certiorari and counsel's motion to be relieved as counsel, the South Carolina Supreme Court denied certiorari and granted counsel's request to be relieved.

On February 21, 2003, petitioner filed another PCR application. Judge Dennis granted the State's motion to dismiss, by written order, November 21, 2003. On April 26, 2004, petitioner's appointed counsel filed a *Johnson* petition for writ of certiorari on petitioner's behalf and moved to be relieved as counsel. Respondents assert, and petitioner has not denied, that an appeal from this Order is currently pending in the South Carolina Supreme Court.

In the instant case, respondents filed a motion for summary judgment on April 30, 2004. On August 30, 2004 petitioner, through counsel, filed a response to respondents' motion for summary judgment. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 this matter comes before the court with the Report and Recommendation ("the Report") of United States Magistrate Thomas E. Rogers, III, filed February 24, 2005. This Court is charged with making a *de novo* determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or

---

[2] The South Carolina Supreme Court had previously filed an Order on January 10, 2003, informing petitioner that it would no longer accept *pro se* filings from him because of his "numerous abuses of the appellate process and voluminous *pro se* filings."

[3] *Johnson v. South Carolina*, 364 S.E.2d 201 (S.C. 1988).

3

recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

Based on a review of the record, the Report concluded that summary judgment should be granted. The Magistrate Judge advised petitioner of the procedures and requirements for filing objections to the report. On April 25, 2005, after several extensions of time, petitioner filed his objections to the Magistrate Judge's Report. Petitioner argues that the plea was defective and that plea counsel was ineffective in failing to ensure that petitioner was adequately apprised on the record of the charges. Petitioner withdraws grounds three (3), four (4), and five (5).

## **Summary Judgment**

Respondents filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary Judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rules 56(c), FRCP; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on

4

beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Barber v. Hosp. Corp. of Am.*, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## **Defectiveness of the Plea**

Petitioner argues that his plea was defective "because he had no notice on the record of the elements of the crimes with which he was charged and there is no acknowledgment he committed them." (Objections p. 2.) Despite the fact that petitioner's counsel told the court that Slezak understood the charges against him and Slezak's own testimony that he understood the questions asked of his counsel and that he agreed with the answers, petitioner alleges that he did not issue a free and voluntary plea:

> To begin with, Mr. Slezak's counsel attempted to correct certain assertions by the prosecutor in mitigation of his guilt at the sentencing phase of the proceedings, obviously urged to do so by Mr. Slezak's objections. Even then, there was no acknowledgment by Mr. Slezak that he had committed the crimes, and there is certainly the inference from the proceedings he thought there might be some defense. For example, he asserted, through his lawyers, that he went to the store without any intent to shoot or injure anyone.
> Moreover, within seven days of his sentencing, Mr. Slezak authored an inartful post-conviction petition clearly evincing dissatisfaction with the proceedings.
> It is therefore easily inferable from the record that Mr. Slezak did not have a clear understanding of the crimes with which he was charged, and there is certainly no clear admission of guilt on this record.

(Objections pp.3-4.) Petitioner argues that "the record of state proceedings does not demonstrate that Mr. Slezak has been adequately apprised of the precise crimes he was accused of with a clear admission of guilt" and that "it is not constitutionally significant that the sentencing hearing which took place subsequently reflected the factual basis of the charges lodged against Mr. Slezak."

5

(Objections p. 4.)

The Court notes as an initial matter that the petitioner does not contest the Magistrate Judge's recommendation that his second claim is procedurally barred. It appears to this Court, and petitioner has not disputed the Magistrate Judge's recommendation, that

> [t]he petitioner did not raise these issues in his initial PCR application. He attempted to raise the issues in a second PCR application which was dismissed as successive. Therefore, these issues were not raised on direct appeal or in a proper PCR application. The petitioner has not shown cause and prejudice to overcome the default. Petitioner has not set forth any cause in his response for procedural default.

(Report p. 35.)[4]

The Court agrees with the Magistrate Judge's application of the doctrine of procedural default. Additionally, the Court finds that petitioner cannot succeed on the merits of this claim. A plea of guilty may be involuntary in two ways: (1) because the accused does not understand the nature of the constitutional protections he is waiving, or (2) because he has such an incomplete understanding of a charge that his plea cannot stand as an intelligent admission of guilt. *See Henderson v. Morgan*, 426 U.S. 637, 645 (1976). It appears to be the second avenue which the petitioner is pursing, as his objections state that "he had no notice on the record of the elements of the crimes with which he was charged and there is no acknowledgment he committed them." (Objections p. 2.)

Petitioner relies on *Henderson v. Morgan*, *supra*, for his argument: "the fact that the record of state proceedings does not demonstrate that Mr. Slezak has been adequately apprised of the precise crimes he was accused of with a clear admission of guilt, [as] required by *Henderson*." (Objections p. 4.) *Henderson* was a unique case. In that case, the Supreme Court stated:

> There is nothing in this record that can serve as a substitute for either a finding after

---

[4] For a discussion of exhaustion and procedural default, see the Report at pages 19-24.

trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that this plea would be an admission of fact; and he made no factual statement or admission necessarily implying that he had such intent.

*****

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

*Henderson*, 426 U.S. at 646-647.

State court judges are not required to engage in the Rule 11 colloquy mandated for the federal bench. *Wade v. Coiner*, 468 F.2d 1059, 1060 (4th Cir. 1972). "If the record affirmatively shows that the plea was intelligently and voluntarily entered, that is enough." *Id*. The Fourth Circuit has stated that "it would probably suffice for the Clerk or defendant's counsel, or even the solicitor, to advise the defendant of the nature of the charge and the consequences of his plea rather than the judge himself addressing the defendant as required by Rule 11." *Id*.

Petitioner was charged with two counts of murder and one count of armed robbery. He entered a plea of guilty to the three indictments in exchange for the State of South Carolina agreeing to withdraw its previously filed intention to seek the death penalty. At his plea hearing, petitioner was represented by Robert Wallace, William Youngblood, and Paul Tinker.[5]

The following exchange occurred at petitioner's plea colloquy:

> THE COURT: All right. Mr. Wallace, have you, Mr. Youngblood, and Mr. Tinker had an opportunity to confer with the Defendant, Mr. Gary Ronald Slezak, with reference to the charges contained in these three indictments and the possible punishment applicable thereto?

---

[5] Wallace and Youngblood were appointed to the petitioner's case. Paul Tinker volunteered to work with Wallace and Youngblood on the case.

7

MR. WALLACE:  Your Honor, Mr. Youngblood and I particularly have conferred with Mr. Slezak on occasions too numerous to recall and literally hours concerning not only the – this plea but the charges, the possible defenses, the evidence on numerous occasions.

THE COURT:  In your opinion, sir, does he understand the nature of these charges, the implication of these charges, and the possible punishment applicable to each of them?

MR. WALLACE:  Your Honor, in my opinion, Mr. Slezak is intelligent, very intelligent person.  I think he clearly understands the charges.  I think he clearly understands the penalties in this case, the maximum penalties.  And in the instance of Murder, the fact that the sentence would be automatic and that is life imprisonment.

In my opinion, he fully understands.

THE COURT:  Has he indicated to you and Mr. Youngblood and Mr. Tinker how he desires to plead with respect to these three indictments, individually or together?

MR. WALLACE:  He has indicated to us that he wishes to enter a plea of guilty to the three indictments with the knowledge that in the instance of the Murder indictments that the maximum and automatic sentence would be life imprisonment.

THE COURT:  Thank you, sir.  You concur in the answers given to the questions which the Court has propounded to Mr. Wallace?

MR. YOUNGBLOOD:  I concur fully, Your Honor.

THE COURT:  Insofar as your relationship with this case, Mr. Tinker, you concur with the answers given to my questions by Mr. Wallace?

MR. TINKER:  Yes, Your Honor, I do.

THE COURT:  Thank you, sir.  Mr. Gary Ronald Slezak?

GARY RONALD SLEZAK:  Yes, Your Honor.

THE COURT:  You have heard one of your attorneys, Mr. Wallace, who spoke to the Court in terms of answering the questions propounded to him.  He spoke not only for himself but for his associate counsel in this matter.

      You heard those questions?

GARY RONALD SLEZAK: (moves head up and down.)

      Yes, sir.

MR. WALLACE: He has to take this down.

GARY RONALD SLEZAK: Yes, I did, Your Honor.

THE COURT: You heard your attorney, Mr. Wallace, state that he and his associate attorneys have conferred with you on numerous occasions concerning the charges contained in these three indictments, spoke with regards to the possible defenses that you may have and also they have advised you of the possible punishment applicable with respect to these three charges.

      Is that correct sir?

GARY RONALD SLEZAK: Yes, it is, Your Honor.

THE COURT: He indicates to the Court that in his opinion he believes that you understand the nature of these charges and the possible punishment applicable thereto.

GARY RONALD SLEZAK: Yes, Your Honor.

THE COURT: Is that correct, sir?

GARY RONALD SLEZAK: Yes, it is.

THE COURT: Understanding the nature of the charges contained in these three indictments and the possible punishment applicable thereto, do you have a desire to plead guilty or not guilty?

GARY RONALD SLEZAK: Guilty, Your Honor.

THE COURT: Do you offer that plea of guilty of your own free will and accord?

GARY RONALD SLEZAK: I do, sir.

THE COURT: Has anyone pressured you in any way whatsoever to cause you to come into this court and offer to plead guilty?

GARY RONALD SLEZAK: No, they haven't, Your Honor.

THE COURT: Has anyone promised you any reward of whatever kind as an inducement for your coming into this court --

GARY RONALD SLEZAK:  No, Your Honor.

THE COURT:  -- and offering to plead guilty?

GARY RONALD SLEZAK:  No, Your Honor, they haven't.

THE COURT:  Based upon your conversations with your lawyer and in your own mind, do you feel that you are guilty of the charges contained in these indictments?

GARY RONALD SLEZAK:  Yes, Your Honor, I do.

THE COURT:  Now, have you been advised, Mr. Slezak, of your rights to have a jury trial on one or all of these charges if you so desired?

GARY RONALD SLEZAK:  Yes, I have, Your Honor.

THE COURT:  Do you understand your rights as to a jury trial?

GARY RONALD SLEZAK:  Yes, I do.

THE COURT:  Do you understand that if you elected to plead guilty to either one of the charges contained in these three indictments that the State of South Carolina would be required under our law to prove your guilt beyond a reasonable doubt and that you would have an opportunity to present any defenses or any witnesses which you may have in your behalf?

Do you understand that, sir?

GARY RONALD SLEZAK:  Yes, I do, sir.

MR. WALLACE:  Your Honor, I believe you said if he pled guilty. I think you meant if he pled not guilty.

THE COURT:  If he pled not guilty. I'm sorry. You understand that if you pled not guilty, the State would have to prove your guilt beyond a reasonable doubt and that you could present any defenses that you might have or any witnesses which you might have? You understand that, sir?

GARY RONALD SLEZAK:  Yes, I do, sir.

THE COURT:  Understanding your rights as to a jury trial, do you still wish to plead guilty?

GARY RONALD SLEZAK:  Yes, I do, Your Honor.

(Plea Transcript, A.R. pp. 4-9.)

The plea colloquy establishes that the trial judge thoroughly questioned petitioner as to his understanding of the plea and the rights he was waiving. Petitioner's attorney stated that petitioner understood that his sentence for murder would automatically be life imprisonment. The transcript reveals that it was announced that petitioner was indicted for two counts of murder and one count of armed robbery. Petitioner testified that he understood the nature of the charges against him and the maximum and automatic sentences and still wanted to plead guilty. This Court finds that petitioner's pleas were intelligently and voluntarily entered into, as evidenced by the plea transcript.

## **Ineffective Assistance of Trial Counsel**

Petitioner alleges that his trial counsel was ineffective in failing to insure that he was adequately apprised on the record of the charges. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). In the case of *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first prong, "[t]he defendant must show that counsel's representations fell below an objective standard of reasonableness under prevailing professional norms." *Id*. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Turner v. Bass*, 753 F.2d 342, 348 (4th Cir. 1985), *quoting Strickland, reversed on other grounds* 476 U.S. 28 (1986). In meeting the second prong, a complaining defendant must show that

11

he was prejudiced before being entitled to reversal: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694-695.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the *Strickland* test. *See Williams v. Taylor*, 529 U.S. 362 (2000) ("*Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.").

As discussed above, petitioner pled guilty, under oath, to the charges he was facing. Petitioner and the court were made aware by trial counsel that the plea was entered into in exchange for the State withdrawing its intention to seek the death penalty. Mr. Wallace, one of petitioner's trial counsel, told the judge that they "conferred with Mr. Slezak on occasions to numerous to recall and literally hours concerning not only – this plea but the charges, the possible defenses, the evidence on numerous occasions." (Plea Transcript, A.R. p. 5.) Later in the plea transcript, when questioned if he was satisfied with the advice and representation of his attorney, petitioner responded "fully, sir" and told the judge that his attorneys had done everything they could have on his behalf. (Plea Transcript, A.R. p. 10.)

The PCR judge found petitioner's claim that his trial counsel was ineffective to be without merit. That court found:

As to the Applicant's allegation that he received ineffective assistance of trial counsel,

> this Court finds that the extensive guilty plea record speaks for itself. Counsel for the applicant was diligent in his representation of the Applicant, performed well within the range of competence demanded of attorneys in criminal matters and performed within the wide range of reasonable professional assistance. . . .
>
> This court specifically finds that the representation provided to the Applicant by his trial attorney, both prior to and during his guilty plea proceeding, is well within the standard of competence demanded of attorneys in criminal matters and is within the wide range of reasonable professional assistance.

(A.R. pp. 342-43.) In the Order denying petitioner's motion to alter, amend and/or modify the order of dismissal, the PCR court stated: "this Court points out that Applicant is an admitted double murderer. This Court finds that Applicant pleaded guilty for only one reason: to save his own life." (A.R. p. 368.)

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorneys' performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. This Court finds that the state court's rejection of petitioner's ineffective assistance of counsel claim did not result in an unreasonable application of federal law and was not based upon an unreasonable determination of facts.

## **Conclusion**

In his report, Magistrate Judge Rogers recommends that respondents' motion for summary judgment be granted. The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge,

13

or recommit the matter to him with instructions.  28 U.S.C. § 636(b)(1).

The Court has reviewed the Report, objections, pleadings, memoranda, and applicable law. The Court overrules all objections and adopts the Report and Recommendation and incorporates it herein by reference.  Accordingly, respondents' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**


                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

July 11, 2005
Florence, SC